IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES RAMOS, | : | No. 07-cv-1917 |
| Petitioner, | : | |
| | : | (District Judge John E. Jones III) |
| v. | : | |
| RAYMOND LAWLER, et. al, | : | (Magistrate Judge Smyser) |
| Respondents. | : | |

# MEMORANDUM

## May 14, 2009

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge J. Andrew Smyser (Rec. Doc. 24), which recommends that Petitioner Charles Ramos' ("Petitioner" or "Ramos") petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be granted in relation to his conviction for conspiracy to commit murder.[1]

Both Ramos and the Respondents filed timely objections to the R&R. Accordingly, the matter is ripe for disposition. For the reasons set forth below, the

---

[1] As we will recount below, Petitioner was also convicted of aggravated assault and conspiracy to commit aggravated assault in the Dauphin County Court of Common Pleas.

1

Court will overrule both the Petitioner's and Respondents' objections and adopt the Magistrate Judge's R&R in its entirety.

## I. STANDARD OF REVIEW

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. Raddatz, 447 U.S. at 674-75; see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

## II. STATEMENT OF FACTS[2]

On February 13, 2003, Ramos was convicted by a jury in the Dauphin County Court of Common Pleas of criminal conspiracy to commit murder, criminal

---

[2] The factual recitation contained herein is taken from the Magistrate Judge's apt summary contained in his R&R. With a mind toward brevity, and since the parties's objections to the R&R evince a thorough understanding of the facts, the instant factual recitation will synthesize the most salient points contained in the R&R into a cogent narrative. To ensure that the instant document is thorough and complete, we will incorporate by reference Sections III, IV, and V of the R&R, which we will attach to this Memorandum for ease of reference.

conspiracy to commit aggravated assault, and aggravated assault. During that same proceeding, he was acquitted of one count of attempted homicide. Petitioner appealed, but his conviction was upheld by the Superior Court of Pennsylvania. Petitioner proceeded to file a Pennsylvania Post Conviction Relief Act ("PCRA") Petition, claiming that his trial counsel, Attorney Robert Laguna ("Attorney Laguna"), was ineffective. This PCRA petition was denied by the trial court, a decision that was upheld by the Superior Court of Pennsylvania. The instant habeas petition is based upon the same ineffective assistance of counsel claim. Ramos supports this claim with references to the evidence elicited at his trial and the testimony of Attorney Laguna at the PCRA hearing. We will now briefly recapitulate the salient aspects of these proceedings.

Ramos was on trial for an incident that occurred at the home of Angel Maldonado ("Maldonado") on April 13, 2002.[3] Ramos and a friend ("Diaz") went to Maldonado's home, Ramos knocked on the door, Maldonado answered, and a physical altercation ensued. Diaz entered the fray and struck Maldonado, who

---

[3] Prior to the incidents in question, Ramos and Maldonado were friends. At a time prior to the incident in question, both men dated women who were sisters. Ramos' relationship ultimately failed, but Maldonado's relationship was ongoing on the date in question. The sister Ramos had dated ultimately had three children with another man, Eric Fenetti ("Fenetti"). Some months prior to the incident, Ramos met Fenetti. On a later date, but before the date of the incident, Maldonado brought Fenetti to Ramos' place of work. Prior to April 13, 2009, Ramos informed others that he intended to "talk" to Maldonado.

3

retreated to the kitchen. Ramos and Diaz pursued him and, when they caught him, continued to attack him. Ramos held Maldonado's neck, while Diaz struck Maldonado in the back with a knife.[4] Diaz pled guilty to conspiracy to commit murder, conspiracy to commit aggravated assault, and aggravated assault prior to Ramos' trial.

At Ramos' trial, Attorney Laguna believed it necessary to place into evidence the fact that someone other than Ramos had pled guilty to the stabbing. While questioning Maldonado, Attorney Laguna further believed that Maldonado was being vague when questioned about who stabbed him. Accordingly, Attorney Laguna proceeded to elicit testimony from Maldonado that he had witnessed Diaz plead guilty to "the charges" and to the stabbing.[5] Although Attorney Laguna never inquired as to the substance of the guilty plea, the prosecution took his line of questioning as opening the door to such matters.[6] Thereafter, the prosecutor elicited testimony that Diaz had pled guilty to conspiracy to commit murder. As a result,

---

[4] There is no evidence that Ramos or Diaz arrived at Maldonado's residence armed. From this we can infer that the knife used to stab Maldonado was procured from Maldonado's kitchen. At trial, Ramos testified that he was unaware that Diaz was stabbing Maldonado.

[5] Attorney Laguna entered upon this course of action prior to knowing that Diaz would invoke his Fifth Amendment right in order to avoid testifying at the Ramos' trial.

[6] Without Attorney Laguna's inquiry as to the existence of the guilty plea, the charges to which Diaz pled guilty could not have been admitted into evidence by the prosecution. See United States v. Bruton, 391 U.S. 123, 125, 130 (1968); Pointer v. State of Texas, 380 U.S. 400, 405 (1965); Commonwealth v. Maleno, 407 A.2d 51, 52 (Pa. Super. 1979).

the trial judge twice instructed the jury that Diaz's guilt should in no way bear on their determination of Ramos' guilt.[7] The jury returned a guilty verdict with regard to the conspiracy to commit murder, conspiracy to commit aggravated assault, and assault charges.

After unsuccessfully filing a PCRA petition, Ramos filed the instant habeas petition, the merits of which were analyzed by the Magistrate Judge. After a review of the trial transcript, Magistrate Judge Smyser determined that Attorney Laguna's actions constituted ineffective assistance of counsel. In making this conclusion, Magistrate Judge Smyser noted that Attorney Laguna's perception that Maldonado was being vague in his trial testimony was not supported by the testimony itself, as Maldonado was "emphatically clear . . . that Diaz stabbed him." (Rec. Doc. 24 p. 19 (citing Rec. Doc 14., Ex. A, p.73)). Magistrate Judge Smyser noted that introducing evidence of Diaz's culpability for the stabbing in no way negated Ramos' culpability with regard to the conspiracy charges, and, in fact, opened the door for the prosecution to elicit testimony that was directly inculpatory to Ramos in relation

---

[7] In fact, in response to a question from Juror No. 12 regarding the effect Diaz's guilty plea had on Ramos' trial, the trial judge responded: "[Y]ou are to decide the case independently on the facts. I told you what he pled guilty to . . . I mean that's a fact. You can't make that go away. Pretend you never heard it. You heard it, but you are simply to decide in this particular case, forget about Mr. Diaz, did the Commonwealth prove this Defendant guilty beyond a reasonable doubt either as a conspirator or as an accomplice or both?" (Rec. Doc. 29-2, Ex. A at 198-99).

to those charges.[8] (Rec. Doc. 24 pp. 20-21). The Magistrate Judge noted that without introduction of Diaz's guilty plea, there was little evidence to support the theory that the Diaz and Ramos conspired to kill Maldonado; however, with such evidence in the record, in order to acquit Ramos of that conspiracy charge, the jury "would have had to reject the out-of-court co-conspirator's implicit assertion, under oath [and despite the adverse effect on his own interest], that he and Ramos had actually [jointly] planned to murder Maldonado." (Id. 20).

Further, Magistrate Judge Smyser noted that Attorney Laguna's closing argument he made no exculpatory use of Diaz's guilty plea as it related to the conspiracy charges, whereas the prosecutor relied extensively, almost exclusively, on the same during his closing argument. (Id. p. 24). Although the trial court instructed that the substance of the guilty plea could not be used as evidence of Ramos' guilt, Magistrate Judge Smyser asserted that there could be no way of knowing whether the substance of the guilty plea affected the jury's deliberations. (See id. pp. 24-25). This inference was counted against Attorney Laguna in the

---

[8] Magistrate Judge Smyser further asserted that it was unreasonable for Attorney Laguna to believe that the prosecutor would not take his line of questioning as opening the door to inquire as to the substance of Diaz's guilty plea. (Id. p. 18). In lieu of placing Diaz's guilty plea into evidence, the Magistrate Judge opined that Attorney Laguna could have achieved his objective by seeking a jury instruction reminding the jury not to speculate about the case(s) of co-conspirators.

6

R&R.[9] In light of all of the foregoing, Magistrate Judge Smyser concluded that, while Attorney Laguna had acted strategically in a manner he calculated would serve Ramos' interests, the strategy was in fact unreasonable. However, the Magistrate Judge opined that Attorney Laguna was ineffective only in relation to the conspiracy to commit murder charge, as there was ample evidence of a conspiracy to assault Maldonado without Diaz's guilty plea, meaning that the admission of the guilty plea was not prejudicial in the latter regard. Accordingly, Magistrate Judge Smyser recommended that we grant the instant petition as it relates to the conspiracy to commit murder charge.

## III. DISCUSSION

Petitioner is proceeding under 28 U.S.C. § 2254. That statute states, in pertinent part, "An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–(I) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(1) (1996). Here, the "clearly established Federal law" which undergirds

---

[9] The Magistrate Judge refers to the admission of the guilty plea as "apparently outcome determinative." (Id. p. 31).

Petitioner's habeas claim is the Sixth Amendment right to effective assistance of counsel. In articulating the standard of an ineffective assistance of counsel claim, the Supreme Court of the United States stated, "[A] defendant must show that counsel's performance was deficient, and that this prejudiced the defense." Wiggins v. Smith, 539 U.S. 51, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).[10] Having taken cognizance of this standard, and for the reasons chronicled above, Magistrate Judge Smyser concluded that Attorney Laguna was ineffective in his representation of Petitioner with regard to the conspiracy to commit murder charge, meaning that the instant petition should be granted to that extent and denied in all other respects.

---

[10] "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.' We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 687). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action 'might be considered sound trial strategy.'" Utz v. Sabina, 2006 WL 145595 * 7 (W.D. Pa. 2006) (quoting Strickland, 466 U.S. at 689). "The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place." Utz, * 7 (citing Strickland, 466 U.S. at 689).

"[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Wiggins, 539 U.S. at 534 (quoting Strickland, 466 U.S. at 694). "In a case of 'grave doubt' about the harmlessness of the error, the writ should be issued." Utz, *8 (citing O'Neal v. McAninch, 513 U.S. 432 (1995)).

Both the Petitioner and Respondents object to the R&R. The Petitioner claims that Attorney Laguna's conduct prejudiced him and was ineffective as to all charges, meaning that the instant petition should be granted in all respects. Conversely, the Respondent contends that Attorney Laguna did not provide ineffective assistance, meaning that the petition should be denied in all regards. We shall address these contentions and the merits thereof *seriatim*.

### A. Petitioner's Objections

In the first instance, Ramos contends that the instant petition should be granted because the introduction of Diaz's guilty plea constituted reversible error and therefore bespeaks Attorney Laguna's deficiency as trial counsel. Specifically, Ramos agrees with the R&R to the extent that it suggests that Attorney Laguna's actions rendered him ineffective with respect to the conspiracy to commit murder charge; however, Petitioner also claims that Attorney Laguna's actions rendered him ineffective with regard to the aggravated assault and conspiracy to commit aggravated assault charges. In support of this claim, he notes that the Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. The Supreme Court of the United States has held that it is a violation of the Confrontation Clause to admit into evidence inculpatory statements of a co-

9

defendant when that co-defendant does not testify at trial. United States v. Bruton, 391 U.S. 123, 125 (1968). In Commonwealth v. Maleno, 407 A.2d 51 (Pa. Super. 1979), the Superior Court of Pennsylvania further stated that evidence of the mere fact of a co-defendant's guilty plea violated the Confrontation Clause. See Maleno, 407 A.2d at 52 (holding that admitting evidence of a guilty plea for purposes of establishing unavailability was indistinguishable, for the purposes of the Confrontation Clause, from admitting the substance of the guilty plea). Consequently, Petitioner asserts that he should be awarded a new trial because Attorney Laguna opened the door for the jury to hear evidence regarding Diaz's guilty plea without having the opportunity to cross-examine him, which allegedly evinces Attorney Laguna's deficiency as trial counsel.

While this argument is appealing on its face, further consideration of the applicable case law reveals that it is unavailing. As the Superior Court of Pennsylvania noted in its denial of Petitioner's PCRA petition, "absent a showing to the contrary, we presume that jurors follow the court's instructions." (Rec. Doc. 29, Ex. P, pp. 6-9) (citing Commonwealth v. Robinson, 864 A.2d 460, 513 (Pa. 2004)). In the matter *sub judice*, the trial judge instructed the jury that they should not

consider Diaz's guilty plea as substantive evidence against Ramos.[11] There is no record evidence indicating that the jury improperly considered Diaz's guilty plea as substantive evidence of Ramos' guilt as to the assault charges.[12] Accordingly, there is no reason to believe that Ramos would have been acquitted on the assault charges if the references to Diaz's guilty plea, and the substance therein, were never made.[13] Consequently, since we can detect no appreciable prejudice to Ramos on the assault charges,[14] we will overrule Petitioner's objections insofar as his ineffective counsel argument is grounded in the Confrontation Clause.

---

[11] To reiterate, the trial judge stated, "[Y]ou are to decide the case independently on the facts. I told you what [Diaz] pled guilty to . . . I mean that's a fact. You can't make that go away. Pretend you never heard it. You heard it, but you are simply to decide in this particular case, forget about Mr. Diaz, did the Commonwealth prove this Defendant guilty beyond a reasonable doubt either as a conspirator or as an accomplice or both?" (Rec. Doc. 29-2, Ex. A at 198-99).

[12] Petitioner maintains that the above referenced instruction was ambiguous and confused the jury, meaning that the presumption enunciated in Robinson has been rebutted. To be sure, the instruction is rather tortured. However, even assuming *arguendo* that it was ineffective, as will be noted there was ample evidence of Petitioner's guilt on the assault charges independent of the Diaz guilty plea.

[13] As we will explain below, there was record evidence independent of Diaz's guilty plea that would have supported the assault convictions. Accordingly, the convictions on the assault charges are consistent with the jury obeying the jury instructions, and any antithetical conclusion cannot be logically drawn therefrom.

[14] Having determined that there was no prejudice to the Petitioner, we need not analyze if Attorney Laguna's actions were reasonable under the circumstances in order to conclude that he provided effective assistance with regard to the assault claims. See Strickland, 466 U.S. at 697 (stating, "[T]here is no reason for a court . . . to approach the [components of the ineffective assistance of counsel] inquiry in the same order or even address both components of the inquiry if the defendant makes an insufficient showing on one.").

As an alternative argument for Attorney Laguna's ineffectiveness on the assault charges, Petitioner appeals to the elements of the substantive charges and the trial evidence adduced in relation thereto. In Pennsylvania, a person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1). "Malice is a crucial element of aggravated assault, and is established when there is a 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty . . . .'" Commonwealth v. McClendon, 874 A.2d 1223, 1229 (Pa. Super. 2005) (internal citations omitted).[15]

The record evidence at Ramos' trial indicated that on the night of the incident in question, Ramos and Diaz punched Maldonado in concert before Ramos restrained Maldonado while Diaz punched and stabbed him in the back. We believe that participating in the intentional beating and stabbing of a defenseless victim constitutes "extreme indifference to human life" and therefore qualifies as

---

[15] To prove conspiracy, "the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another . . . to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." Commonwealth v. Murphy, 577 Pa. 275 (Pa. 2004). Each member of a conspiracy is held liable for all acts committed by co-conspirators in furtherance of the conspiracy. See e.g., Commonwealth v. Wayne, 553 Pa. 614 (Pa. 1998).

aggravated assault. Further, the R&R indicates Ramos himself testified that on the night of the beating he and Diaz resolved to "get" Maldonado and subsequently ventured to Maldonado's home. From this testimony and the acts that occurred upon Ramos' and Diaz's arrival at Maldonado's home, we believe a reasonable jury could conclude that Ramos and Diaz entered into an agreement to assault Maldonado, intended to do so, and carried through on this intent upon their arrival. Accordingly, based on above testimony alone, we believe that a reasonable jury could conclude that Ramos and Diaz were guilty of aggravated assault and conspiracy to commit aggravated assault. This conclusion is drawn from evidence independent of Diaz's guilty plea. Therefore, it is our determination that the entry of the reference to the guilty plea at Ramos' trial did not prejudice Ramos with regard to his conviction for aggravated assault and conspiracy to commit aggravated assault, as he most likely would have been convicted of those crimes even in the absence of the guilty plea's entry into evidence. Petitioner would have us find that the introduction of the guilty plea so poisoned the well that we must disregard the other, considerable evidence of his guilt on these charges. We decline to do so. It is our belief that Ramos suffered no actual prejudice relative to the assault charges as a result of the references to Diaz's guilty plea, and the substance contained therein. Therefore, we shall overrule Petitioner's objections in their entirety.

B.     **Respondents' Objections**

Respondents argue that Attorney Laguna's conduct did not rise to the level of ineffective assistance of counsel relative to the conspiracy to commit murder charge because his strategy in eliciting the testimony related to Diaz's guilty plea was reasonable, and since no prejudice inured from eliciting that testimony as there is no evidence that the jury disobeyed the jury instruction related to it.[16]  We cannot agree.

As the Superior Court noted, and as asserted at the PCRA hearing, Attorney Laguna's conduct was premised on his beliefs that: (I) a conspiracy was evident from the trial testimony; (II) it was important for the jury to hear that another individual (Diaz) was responsible for the stabbing;[17] and (III) Maldonado was vague in responding to questions asking him to identify the individual that stabbed him.

---

[16] Respondents also note that in denying the Petitioner's PCRA petition, the Superior Court of Pennsylvania ruled on the issue of Attorney Laguna's ineffectiveness and determined that his actions were not unreasonable and therefore did not constitute ineffective assistance of counsel.  Respondents now assert that, "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Accordingly, the Respondents argue, quite correctly, that the determinations of the Superior Court should be granted great deference.  However, as we will explain, we believe that there is sufficient record evidence to overcome this presumption of correctness.

[17] This was evidently aimed at gaining an acquittal on the attempted murder charge.

As Magistrate Judge Smyser noted in his R&R, the evidence of conspiracy to murder, exclusive of Diaz's guilty plea, was dubious at best. (See Rec. Doc. 24 p. 29). There was no direct testimony that Ramos and Diaz had entered into a common plan or scheme to murder Maldonado.[18] There likewise was no circumstantial evidence from which a jury could reasonably infer that such a plan was consummated.[19] These conclusions are underscored by the prosecution's closing argument, which relied heavily, if not exclusively, on Diaz's guilty plea to establish the common plan or scheme necessary to support a conspiracy charge.[20] Accordingly, we believe that Attorney Laguna's conclusion that the trial evidence

---

[18] Diaz did not testify and, as Magistrate Judge Smyser noted, the following facts are the only facts Ramos admitted: (I) he had a disagreement with the victim, (II) he agreed with the co-defendant to go to the victim's home on the night of the crime, (III) he knocked on the door, (IV) he punched the victim, (V) he continued to fight the victim, (VI) there was a knife involved in the fight, and (VII) his initial reaction was to lock himself in his room after he heard the ambulance. (See Rec. Doc. 14, Ex. M).

[19] We previously determined that a jury could infer the existence of a conspiracy to commit *aggravated assault* from the following record facts: (I) on the night in question, Ramos and Diaz resolved to "get" Maldonado and subsequently ventured to Maldonado's home; (II) upon arriving at the victim's residence, Ramos and Diaz punched him in concert before Ramos retrained the him while Diaz punched and stabbed him in the back with one of Maldonado's kitchen knives. While a jury could reasonably infer from these facts an intent to inflict bodily harm upon Maldonado, we believe that inferring an intent to kill from these facts alone is a leap in logic that a reasonable jury would not make, especially considering that: (I) Ramos and Diaz went to Maldonado's home without a weapon; and (II) Ramos' claim that he was unaware that Diaz was stabbing Maldonado was uncontroverted by trial evidence.

[20] We believe it logical that the prosecutor would have identified in his closing argument any and all incriminating evidence, aside from the Diaz plea, that established a conspiracy or from which an inference of conspiracy could be logically drawn. That the record reveals he did not cite to any substantial evidence other than the Diaz plea shows the magnitude of the problem caused by its admission.

15

clearly established a conspiracy was unreasonable as it related to the murder conspiracy.

Further, while it was reasonable to adduce evidence that attributed the stabbing to someone other than Ramos,[21] Attorney Laguna's decision to use the Diaz guilty plea as the conduit for such evidence was premised on the belief that Maldonado could not unambiguously and convincingly identify the individual who stabbed him. However, a review of the trial transcript, and in particular Attorney Laguna's cross-examination of Maldonado, belies this belief:

> Q [Laguna]: So that's what happened. So Charlie [Ramos] punches you. You guys were fighting. At some point he gets you down or he has you in some kind of headlock or he has you and it is at that point when you feel this stuff on your back that according to you, Gabriel Rosa-Diaz stabbed you?
> A [Maldonado]: Yes.
> Q: Charlie never stabbed you?
> A: No.

(Rec. Doc. 14 Ex. 4, p. 73). This excerpt establishes that Maldonado was not equivocal or vague in identifying the individual who stabbed him, meaning that eliciting information regarding Diaz's guilty plea to establish the same was unnecessary. However, the mere fact that eliciting the testimony was unnecessary does not, by itself, render Attorney Laguna's conduct ineffective. His actions rose

---

[21] Such evidence would support an acquittal and the attempted murder charge.

to the level of ineffective assistance not because they were unnecessary in light of his objective to gain an acquittal on the attempted murder charge, but because they directly opened the door for the prosecution to elicit evidence that would have never been heard by the jury and that directly inculpated Ramos in a conspiracy to murder Maldonado, a crime for which, as noted, there was little additional evidence of guilt.[22]

For the foregoing reasons, we believe that there are sufficient facts to rebut the presumption of correctness inuring to the Superior Court's determination that Attorney Laguna's conduct was not unreasonable. In fact, it is our opinion that Attorney Laguna's conduct was deficient and unreasonable because he failed to exercise the customary skill and knowledge of a competent defense attorney.

---

[22] To articulate our position differently, Attorney Laguna's *objective* of gaining an acquittal on the attempted murder charge was not unreasonable. There were two ways to accomplish this objective: (I) using Maldonado's testimony; or (II) eliciting evidence regarding Diaz's guilty plea. Attorney Laguna chose the second route, which was unreasonable for the following reasons. Both avenues would have readily accomplished the objective of "putting the knife in someone else's hands." The first avenue had no potentially detrimental consequences associated with it. The second avenue, however, did have potentially detrimental consequences associated with it, namely that it could open the door for the prosecution to elicit evidence that the jury would not otherwise hear and that directly inculpated Attorney Laguna's client in a crime for which acquittal was a real possibility absent the evidence, but for which conviction was a real possibility in light of the evidence. Given these two choices, we believe that a reasonable, competent defense attorney under these circumstances would have chosen the first avenue in order to avoid jeopardizing a favorable verdict on any crime where acquittal was a possibility. Accordingly, we believe that Attorney Laguna's decision to walk down the second avenue was patently unreasonable, even though he accomplished his objective of gaining an acquittal on the attempted murder charge.

However, this determination alone does not render Attorney Laguna's conduct ineffective. In order to arrive at that conclusion, we need to determine whether his unreasonable conduct prejudiced the Petitioner.

We again note that there is a presumption that a jury will obey a jury instruction. However, this is only a *presumption* and can be rebutted by record evidence and the circumstances of the case. As we have already noted, there was little or no evidence, absent Diaz's guilty plea, to establish the common plan or scheme necessary to sustain a conviction for conspiracy to commit murder. Accordingly, we have stated our opinion that a reasonable jury would not have inferred from this evidence alone the common plan or scheme necessary to convict Ramos of conspiracy to murder Maldonado. The fact that the jury returned a guilty verdict on the conspiracy to commit murder charge indicates that it necessarily and improperly considered Diaz's guilty plea as substantive evidence against Ramos.[23] Our determination that an acquittal on this charge was likely in the absence of evidence related to Diaz's guilty plea renders Attorney Laguna's actions in

---

[23] The Respondents argue the verdict is consistent with obeying the jury instruction proscribing consideration of Diaz's guilty plea as substantive evidence against Ramos. However, their argument seems to conflate the conspiracy charge and the attempted murder charge, and in any event, we believe such an argument is specious for the reasons outlined above.

introducing such evidence prejudicial to Ramos on the conspiracy to commit murder charge.

Since we have determined that Attorney Laguna's conduct was both unreasonable and prejudicial to Ramos with regard to the conspiracy to commit murder charge, we believe that Attorney Laguna provided ineffective assistance with regard to that charge.[24]  We will therefore overrule Respondent's objections in their entirety and enter the following Order.

---

[24] We are compelled to note that Attorney Laguna appears frequently before us and has at all times provided competent and zealous representation to his clients.  However, even the most accomplished advocate is capable of choosing a strategy that goes awry and ends in disaster.  Such was the case here.

19